**Frank NEWSOME, Plaintiff,**

**v.**

**Jerry ERWIN, et al., Defendants.**

**No.  C–3–99–473.**

United States District Court,
S.D. Ohio,
Western Division.

Sept. 1, 2000.

Frank Newsome, pro se.

Jeffrey C. Turner, Dayton, OH, for defendants.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION TO DISMISS (DOC. # 19) FILED BY DEFENDANTS JERRY ERWIN AND STEVE STAPLETON; MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS (DOC. # 37) AND SUPPLEMENTAL REPORT AND RECOMMENDATIONS (DOC. # 42) ADOPTED IN PART AND REJECTED IN PART; PLAINTIFF'S MOTION FOR INTERLOCUTORY APPEAL (DOC. # 8–2) OVERRULED; PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (DOC. # 33) OVERRULED; PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING A STAY (DOC. # 38) OVERRULED.[1]

RICE, Chief Judge.

This action stems from Plaintiff Frank Newsome's pro se Complaint (Doc. # 2), alleging that the Defendants, Greene County Sheriff Jerry Erwin, Greene County Administrator Steve Stapleton[2] and one or more unidentified Greene County Deputy Sheriffs, violated 42 U.S.C. § 1983 by, *inter alia,* shooting and killing Nila, his pet lioness. In particular, Newsome alleges that:

> On or about September 11, 1999, Plaintiff arrived at 2921 S. Charleston Road with neighbors at 4:00 PM. Plaintiff noticed three of his dogs were loose and a Siberian tigress and lioness. The lioness ran through the fencing she was in. Plaintiff immediately dialed 911. Greene County Sheriff Jerry Erwin and deputies came out. Plaintiff told Sheriff

---

1. Although the Plaintiff's Motion for Hearing for Oral Argument (Doc. # 27) appears on the Court's docket records as a pending Motion, the Magistrate Judge overruled it on July 24, 2000. (Doc. # 49).

2. In his Complaint (Doc. # 2), Newsome misidentifies Stapleton as a Greene County Commissioner.

the lioness was a harmless pet with no claws. That someone broke into the barn area and released some of the animals. Sheriff told Plaintiff that either he or I was going to leave this county. I told him that I would leave if I had the money but I didn't have it. A tranquilizing rifle and pole with liquid inoculation was brought in by a friend of Plaintiff's. The lioness was spotted by a group of people and they let the Sheriff know where she was, approximately a quarter mile from the farm on Solon Road. Sheriff's office monitored her with binoculars while Plaintiff tracked her with the tranquilizing gun. Approximately one-eighth of a mile from the farm we lost sight of her. Plaintiff overheard Sheriff Erwin stating to the deputies, if you get her in sight shoot her. Then Sheriff Erwin came to me and said, you'll have first shot at her. I then told the corporal I was going back to the barn to see if she had come back and he said, okay. (*During the preparation of this complaint upon this 15th day of September, 1999, two deputy's [sic] came next door to the neighbors and asked them about their house being broke into and about the first time I reported to the Sheriff's Department of the barn being attempted to be broken into back in March when Plaintiff's dogs got loose and other exotic animals. No report was ever made of this, just a note for officers to keep an eye on the property, although deputy Sheriff examined where barn door had been pried open and he told me I better fix it.*)

I got to the barn and was going toward it when two men drove up and yelled at me, the lioness is coming up the road toward us, approximately one-sixteenth of a mile from the barn. I got in their vehicle and we drove within 10 feet and I shot her in the side with the tranquilizing rifle. I told them to go tell the other deputies and I would try to locate her and give her the final inoculation. To work the tranquilizer would take 7 to 15 minutes before I could give her the second shot. The deputies came and we were trying to find her in the dark. Within a few minutes, Plaintiff's neighbors spotted her under a tree next to their house and barn. They were within 10 feet of her [and] she ran back toward the barn. They yelled at me and I came with the pole inoculator. Within a minute Sheriff's deputies were behind me. I told them I was going to give her a second shot. As I went toward her she jumped inside the fencing. I raised the fencing up that was down. Then the Sheriff's deputies said I could not try to give her another shot. The order was to kill her. The neighbors were 10–15 feet from her while a marksman deputy approached with a high powered rifle approximately 30 feet from her on their property without permission. He shot at her and she crouched down. Five minutes later several deputies walked up to her, stuck the rifle to her head and shot her again through the fence. She was within feet of the barn she had gotten out of. She was just trying to get back in the barn where she was safe. That's what the neighbors saw. I begged them to let me go to her after the first shot but they said I would be locked up. Plaintiff is of the belief that the marksman missed the first shot and she dropped down because of the tranquilizer. After examination of her body the next day only one bullet hole was found inside her head. And an area where the tranquilizer hit. They killed her to show force against me.

(Doc. # 2 at 2–4) (emphasis in original).

Newsome's Complaint includes an attachment in which he sets forth the following "Supplemental Facts":

Sheriff Jerry Erwin also stated he was going to be all over me. That he knows plaintiff['s] past. That I was going to leave this county or he was. I have 150 deputies. He also stated in front of a variety of witnesses that if I am caught out on the road I would be arrested. This is on a movie news tape by channel 7 news.

(*Id.* at 11).

Finally, two affidavits are attached to Newsome's Complaint. The first affidavit is from Scott Thompson, an eye-witness to the incident involving the lioness. Thompson avers as follows:

I, Scott Thompson, being duly sworn state on September 11 at approximately 9:00 PM, he and Issac spotted the lioness at an evergreen tree 15 feet from the barn and approximately 20 feet from himself and Issac. They went towards Nila, the lioness, she ran back toward the barn and crouched till Plaintiff was called by them. That's when Plaintiff, deputies, came and ran or she got scared and jumped inside while me and Issac observed her 10 feet away inside fence. When deputies came and shot her. I, Scott Thompson, am of the belief the marksman missed the first shot. Because she crouched down and showed no pain. That I and Issac believe the tranquilizer put her down. The second shot in the side of her head killed her. When I, Scott Thompson, Frank Newsome, and Douglas Thompson, [and] Issac examined her for two bullet holes only one was to be found and [an] area where it appeared the dart had hit for tranquilizing. Also after she was killed Sheriff Jerry Erwin and officers threat-

ened Frank Newsome with arrest if he came off the property and laughed at him. This was in front of Miranda Thompson, Issac, Jerry and myself.

(*Id.* at 9).

The second affidavit is from Newsome, who states:

Plaintiff was arrested approximately six years ago in the city of Xenia, Ohio[,] on a warrant by Sheriff's Department in the city limits of Xenia for a traffic violation Plaintiff already had paid to the city. Three years ago Plaintiff was arrested again for trying to save his animals in a barn fire. Six months ago Plaintiff called the Sheriff's Department. A Sheriff's deputy came out to investigate an attempted break-in of the barn. He said they would do nothing but would make a note of it for Sheriff's deputies to keep an eye on the property. Then on September 11th, there was another break-in, but no report.

(*Id.* at 10).[3]

Based upon the foregoing facts, which the Court accepts as true for present purposes, Newsome alleges (1) due process and equal protection violations of the Fourteenth Amendment and (2) cruel and unusual punishment in violation of the Eighth Amendment. (*Id.* at 5, 11–12). On November 12, 1999, Defendants Erwin and Stapleton filed a Rule 12(b)(6) Motion to Dismiss (Doc. # 19). Thereafter, on December 10, 1999, Magistrate Judge Michael Merz filed a Report and Recommendations (Doc. # 37), reasoning that the Defendants' Motion should be sustained, and that Newsome's Complaint should be dismissed, without prejudice, for failure to

---

**3.** Although Newsome's "affidavit" has been signed and notarized, it fails to indicate that he was sworn or that he made his statement under penalty of perjury. For present purposes, however, such a deficiency is immaterial. The Defendants have moved to dismiss

Newsome's Complaint under Fed.R.Civ.P. 12(b)(6). When ruling upon such a Motion, the Court is required to accept all factual allegations as true, regardless of whether they are presented in the form of admissible evidence.

state a claim upon which relief may be granted.

In support, the Magistrate Judge first noted Newsome's failure to file a Memorandum in opposition to the Defendants' Motion to Dismiss. (*Id.* at 1). He then recognized that the Complaint failed to state any claim whatsoever against Defendant Stapleton. (*Id.* at 3).The Magistrate Judge also explained that Stapleton could not be held liable under § 1983 based upon a respondeat superior theory. (*Id.* at 3–4). With respect to Defendant Erwin, the Magistrate Judge noted that the Complaint did allege his participation in the shooting of Nila "by directing that it be done and/or ratifying the decision of the marksman to shoot." (*Id.* at 4). Nevertheless, the Magistrate Judge concluded that the Complaint failed to state a cruel and unusual punishment claim against Erwin "because the Eighth Amendment applies only to convicted prisoners, which Mr. Newsome was not." (*Id.*). The Magistrate Judge next determined that Newsome lacked a viable Fourteenth Amendment due process claim because he had failed to plead and to prove the absence of an adequate state-law remedy. (*Id.* ). In addition, the Magistrate Judge reasoned that Newsome had failed to state a Fourteenth Amendment equal protection claim because he had not "asserted that ownership of wild animals is somehow a fundamental right or that the class of those persons who do is somehow a suspect class." (*Id.* at 4–5). Finally, the Magistrate Judge noted that Newsome had no constitutional right to receive a police report.[4] (*Id.* at 5).

Thereafter, Newsome filed both a tardy Response to the Defendants' Motion to Dismiss (Doc. # 39) and Objections to the Report and Recommendations of the Magistrate Judge (Doc. # 40). After reviewing those filings, the Magistrate Judge filed a Supplemental Report and Recommendations (Doc. # 42), addressing the various issues raised by Newsome. With respect to Newsome's late-filed Response, the Magistrate Judge reasoned as follows:

> Plaintiff claims that he has stated a claim for relief against the unknown marksman who actually shot the lioness "Nila." The Motion to Dismiss only sought dismissal of Defendants Erwin and Stapleton, so the question of whether a claim is stated against the unknown marksman (who has been neither named nor served), is not before the Court.
>
> Several pages of the Response recite ongoing conflict between Plaintiff and various law enforcement personnel over the last few years, none of which is pleaded or appears to be legally relevant to what is pleaded.
>
> Plaintiff argues without any citation of law that Defendant County Administrator Steve Stapleton is legally responsible for the acts of the Sheriff. Plaintiff has not responded to the point made in the Report that the Sheriff is independently elected by the public and does not answer to any County Administrator. For that reason, Mr. Stapleton's Motion to Dismiss should be granted.
>
> Plaintiff claims that Sheriff Erwin has lied to the news media and slandered the deceased lioness. Neither of these facts, if true, would give rise to any legal liability.

(Doc. # 42 at 1–2).

With respect to Newsome's Objections, the Magistrate Judge stated:

> In the Objections, Plaintiff says he was threatened by Sheriff Erwin, that the threat was made in front of witnesses, and that he has filed affidavits to

---

4. Newsome's Fourteenth Amendment claim was based, in part, on Erwin "not making formal police reports on two separate occasions...." (Doc. # 2 at 5).

show the threat which are attached to his Response. The Affidavit of Maranda Holycross says in conclusory fashion "Sheriff Jerry Irwin [sic] threatened Frank Newsome." It also refers the Court to an attached letter written to the newspapers which she avers is true except for the dates. The letter says "Erwin repeatedly threatened Frank in front of all of us there." The Affidavit of Issac Smith also says in conclusory fashion "Sheriff Erwin threatened Frank Newsome and laughed at him after they shot Nila the lioness." The Affidavit of Tonya Thompson says nothing about any threats. The Complaint itself does not specifically state any threat. It says that Sheriff Erwin said to Mr. Newsome that one of the two of them was going to have to leave the County, a comment the Plaintiff interpreted as a threat.

If a law enforcement officer threatened a citizen with physical violence or any sort of deliberate harassment unless the citizen moved out of a county, that would constitute a violation of constitutional rights. If that is what Plaintiff and his witnesses allege happened between Sheriff Erwin and Mr. Newsome, Plaintiff should be permitted to amend his Complaint to make that specific allegation. A general allegation of "threatening" does not state a claim for relief under 42 U.S.C. § 1983: there are many statements which a law enforcement officer can properly make which would not be unconstitutional. In its present form, the Complaint does not state a claim based upon any threats.

Plaintiff has made no response to the following points in the Report:

1. Shooting of the lioness does not constitute cruel and unusual punishment;

2. Shooting of the lioness does not constitute deprivation of property without due process unless and until Plaintiff has pleaded and proved that Ohio post-deprivation process is inadequate;

3. The Complaint does not state a claim under the Equal Protection Clause; and

4. There is no constitutional right to have the police write a report.

Since there is no objection on these points, they should be adopted.

Accordingly, the Magistrate Judge again recommends that the Complaint be dismissed without prejudice for failure to state a claim upon which relief can be granted.

(*Id.* at 2–3).

In response, Newsome filed Objections to the Magistrate Judge's Supplemental Report and Recommendations on December 28, 1999 (Doc. # 44). Therein, he contends that he was threatened by Erwin's ambiguous statement about one of the two men (Erwin or Newsome) having to leave the county. Newsome also points to the following allegation contained in the "Supplemental Facts" portion of his Complaint:

> Sheriff Jerry Erwin also stated he was going to be all over me. That he knows plaintiff(s) past. That I was going to leave this county or he was. I have 150 deputies. He also stated in front of a variety of witnesses that if I am caught out on the road I would be arrested. This is on a movie news tape by channel 7 news.

(Doc. # 2 at 11).

Newsome insists, once again, that the foregoing statements are actionable under § 1983. In addition, he argues that the shooting of Nila does constitute cruel and unusual punishment in violation of the Eighth Amendment, and that he has stated a § 1983 claim based upon a violation of the due process and equal protection clauses of the Fourteenth Amendment. (Doc. # 44 at 1–5).

I. *Analysis of Defendants' Motion to Dismiss (Doc. # 19), Magistrate Judge's Report and Recommendations (Doc. # 37) and Supplemental Report and Recommendations (Doc. # 42)*

■ Having reviewed the Magistrate Judge's Report and Recommendations (Doc. # 37), Supplemental Report and Recommendations (Doc. # 42), and all Objections thereto, the Court hereby adopts the reasoning of the Magistrate Judge. For the reasons set forth by Magistrate Judge Merz, the Court agrees that Newsome's present Complaint (Doc. # 2) fails to state a viable § 1983 claim against either Erwin or Stapleton, based upon a violation of his Eighth or Fourteenth Amendment rights.[5] For the reasons to follow, however, the Court rejects the Magistrate Judge's recommendation that Newsome's Complaint should be dismissed, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim against Erwin.

■ In order to avoid dismissal under Rule 12(b)(6), a complaint need only contain direct or inferential allegations of all material elements to sustain recovery under *some* viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). In the context of a motion to dismiss, a pro se complaint must be held to less stringent pleading standards than one drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). As a result, a pro se complaint alleging a violation of § 1983 should not be dismissed unless it fails to set forth facts showing a violation of *any* constitutional provision. *Puckett v. Cox*, 456 F.2d 233, 236 (6th Cir.1972) ("[A]lthough the second claim in Appellant's pro se complaint does not appear to allege facts to support a finding of cruel and unusual punishment, Appellant must be permitted to introduce evidence of any constitutional deprivation ... which would warrant relief under § 1983.").

As noted above, Newsome's pro se Complaint does not allege facts to support a § 1983 claim under the equal protection or due process clauses of the Fourteenth Amendment, or under the cruel and unusual punishment provision of the Eighth Amendment. Upon review, however, Court concludes that Newsome *has* alleged sufficient facts to support a § 1983 claim against Erwin and the unidentified shooter, in their individual capacities, based upon a violation of his Fourth Amendment right to be free from unreasonable seizures.[6]

**5.** Although the Magistrate Judge did not specifically address Newsome's argument that Sheriff Erwin threatened him with arrest if he was "caught out on the road," the Court concludes that this allegation fails to state a viable § 1983 claim. In his Complaint, Newsome alleges that Erwin's threat violated his constitutional rights. In *Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir.1989), however, the court reasoned that being placed in fear from spoken words "is not an actual infringement of a constitutional right, and thus, it is not actionable under section 1983." Similarly, in *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir.1987), the Ninth Circuit recognized that a mere "threat to do an act prohibited by the Constitution" is not "equivalent to doing the act itself." Consequently, a plaintiff cannot state a claim under § 1983 based upon nothing more than an allegation that the de-

fendant threatened him with harm if he engaged in constitutionally protected activity. *Id.; see also Washington v. R.U.O. 875 Webster*, 883 F.2d 76, 1989 WL 91653 (6th Cir. Aug.15, 1989) ("Defendant was entitled to judgment as a matter of law because Washington's allegations failed to state a cognizable claim. The threat to do harm in order to interfere with plaintiff's constitutional rights does not in itself give rise to a constitutional violation."). Applied to the present case, the foregoing authorities persuade the Court that Newsome has not stated a viable § 1983 claim based on Erwin's mere threat to arrest him.

**6.** Newsome appears to have sued the Defendants in *only* their individual capacities. In any event, his Complaint fails to state a claim

The Supreme Court has held that a Fourth Amendment seizure of property "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County, Illinois,* 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Law enforcement activities that unreasonably damage or destroy personal property, thereby "seizing" it within the meaning of the Fourth Amendment, may give rise to liability under § 1983. For example, in *Fuller v. Vines,* 36 F.3d 65 (9th Cir.1994), police shot and killed the plaintiffs' pet dog while conducting an investigation. Upon review, the Ninth Circuit reasoned that the plaintiffs stated a viable § 1983 claim by alleging that the destruction of their dog was an unreasonable "seizure":

> The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. Amend. IV. Seizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place. *Soldal v. Cook County,* 506 U.S. 56, 65, 113 S.Ct. 538, 546, 121 L.Ed.2d 450 (1992). A "seizure" of property occurs, within the meaning of the Fourth Amendment, when "there is some meaningful interference with an individual's possessory interests in that property."

*United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).

The destruction of property is "meaningful interference" constituting a seizure under the Fourth Amendment, *Jacobsen,* 466 U.S. at 124–25, 104 S.Ct. at 1662–63; *Bonds v. Cox,* 20 F.3d 697, 701–02 (6th Cir.1994), because the destruction of property by state officials poses as much of a threat, if not more, to people's right to be "secure ... in their effects" as does the physical taking of them. *See Tarpley v. Greene,* 684 F.2d 1, 9 (D.C.Cir.1982). The Fullers' amended complaint alleged that the officers' killing of their dog constituted a Fourth Amendment seizure. A dog is an "effect" or "property" which can be seized. *See Lesher v. Reed,* 12 F.3d 148, 150 (8th Cir.1994). The killing of the dog is a destruction recognized as a seizure under the Fourth Amendment, and thus, the district court abused its discretion when it denied the Fullers' motion to amend on the grounds that the shooting of the dog was not a cognizable claim under the Fourth Amendment.

We conclude that the Fullers have adequately alleged a cause of action under the Fourth Amendment for the killing of their dog in the proposed amended complaint, and therefore, the motion to amend should have been granted. The affidavits submitted by the Fullers alleging the factual background are suf-

---

against the Defendants in their official capacities, even if he did intend to pursue such a claim. It is well-settled that a suit against a government employee in his "official" capacity is nothing more than a suit against the governmental entity for which he works. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court declared that

a local government may not be held liable under § 1983 unless the actions causing the plaintiff's injury represent a custom, practice or policy of the municipality. *Id.* at 694, 98 S.Ct. 2018. In the present case, Newsome has not alleged that any constitutional deprivation resulted from an unlawful custom, practice or policy of Greene County, Ohio. Consequently, his Complaint fails to state a claim against the Defendants in their official capacities.

ficient to foreclose a summary judgment on the issue.

*Fuller,* 36 F.3d at 67–68.

■ Similarly, in *Bonds v. Cox,* 20 F.3d 697 (6th Cir.1994), a homeowner stated a § 1983 claim by alleging that police had violated the Fourth Amendment when they damaged her home and personal effects during the execution of a search warrant. *Id.* at 702. Upon review, the Sixth Circuit reasoned that the plaintiff was not restricted to pleading solely a Fourteenth Amendment claim for the deprivation of property without due process of law. To the contrary, the court recognized that the officers' damage also could constitute an unreasonable "seizure" of the plaintiff's personal property in violation of the Fourth Amendment:

> ... A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County,* 506 U.S. 56, 60, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). The damage to Bonds' house, which included broken doors, mutilated vinyl siding, a cracked commode, holes in walls, broken dishes, and trampled personal belongings, clearly rises to the level of a "meaningful interference" with her possessory interests. *See Jacobsen,* 466 U.S. at 124–25, 104 S.Ct. at 1662 (destruction of a quantity of cocaine during testing constituted a seizure, because test affected defendant's possessory interests). The Fourth Amendment protects against a seizure of property even if it occurs in a context in which privacy or liberty interests are not implicated. *Soldal,* 506 U.S. at 64, 113 S.Ct. at 545. Thus, our finding that Bonds had no reasonable expectation of privacy in the house at 4174 Dunn Avenue does not affect our

conclusion that Bonds has standing to challenge the seizure of her property.

Although we have found that Bonds has standing to assert her property damage claim, we must still address the question of whether the Fourth Amendment is an appropriate vehicle for asserting that claim. In *Miller v. Kunze,* 1988 WL 138916, *5, 1988 U.S.App. LEXIS 17644, *14 (6th Cir. Dec.28, 1988) (per curiam), this Court stated:

> Even if we were to conclude that plaintiffs had standing, we believe that the plaintiffs' monetary loss occasioned by the police officers' legitimate efforts to ensure public safety should be redressed through appropriate· state tort and common-law remedies or, if these are inadequate, under the Fifth Amendment or the due process clause, rather than the Fourth Amendment.

This position, however, was subsequently rejected by the Supreme Court in *Soldal.* In reversing a similar Seventh Circuit holding, the Court observed:

> The Court of Appeals also stated that even if, contrary to its previous rulings, "there is some element or tincture of a Fourth Amendment seizure, it cannot carry the day for the Soldals." ... [T]he court reasoned that it should look at the "dominant character of the conduct challenged in a section 1983 case [to] determine the constitutional standard under which it is evaluated." Believing that the Soldals' claim was more akin to a challenge against the deprivation of property without due process of law than against an unreasonable seizure, the court concluded that they should not be allowed to bring their suit under the guise of the Fourth Amendment. But we see no basis for doling out constitutional protections in such ·a

fashion. Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands.

*Soldal,* 506 U.S. at 69, 113 S.Ct. at 548 (citations omitted). Applying this principle to the case at bar, we conclude that Bonds may assert her property damage claim under the Fourth Amendment.

*Id.* at 702.[7]

■■■ Applied to the present case, the foregoing reasoning persuades the Court that Newsome's pro se Complaint states a viable § 1983 claim against Sheriff Erwin and the unidentified shooter of the lioness,[8] based upon a violation of Newsome's Fourth Amendment right to be free from unreasonable seizures. A pet such as Nila is an "effect" or "property" that can be seized. The killing of the lioness is the destruction of property, which qualifies as a "seizure" under the Fourth Amendment. Finally, accepting Newsome's factual allegations as true, and construing them most

strongly in his favor, a trier of fact certainly could find that the killing of the lioness was an "unreasonable" seizure under the Fourth Amendment. Accordingly, the Court concludes that Newsome's Complaint states a viable § 1983 claim against both Erwin and the unidentified shooter.[9]

Although Erwin did not personally shoot the lioness, Newsome alleges that he directed the hunt and ordered the shooting. Construed most strongly in Newsome's favor, the factual allegations in his Complaint suggest that Erwin was present, or very close by, when the unidentified Sheriff's Deputy approached the tranquilized lioness and shot her in the head. According to Newsome, Erwin knew that the lioness had returned to within a quarter of a mile from home, and he began monitoring her with binoculars. (Doc. # 2 at ¶ 6). When the lioness was only one-eighth of a mile from home, Newsome overheard Erwin telling his deputies, "[I]f you get her in sight shoot her." (*Id.*). Newsome then

---

7. Absent a reasonable expectation of privacy, a criminal defendant lacks the ability to challenge the seizure of property. *United States v. Peters,* 194 F.3d 692, 696 (6th Cir.1999). The Supreme Court has recognized, however, that the Fourth Amendment's prohibition on unreasonable seizures protects not just privacy rights, but also an individual's property rights in items seized by the Government. *Soldal v. Cook County, Ill.,* 506 U.S. 56, 62–63, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (holding that the Fourth Amendment "protects property as well as privacy"). Consequently, the fact that Newsome might lack standing to assert a Fourth Amendment violation of his right to privacy does not preclude him from asserting, in the present civil action, a violation of his Fourth Amendment property rights.

8. As noted, *supra,* only Newsome and Stapleton have moved to dismiss this action. Consequently, the Court need not dwell on the unidentified shooter at this time.

9. In reaching this conclusion, the Court notes a significant distinction between unreasonable seizure claims brought under the Fourth

Amendment and due process claims brought under the Fourteenth Amendment. As the Magistrate Judge properly noted, a plaintiff must plead and prove the inadequacy of post-deprivation state remedies when pursuing a Fourteenth Amendment due process claim. *See Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by *Daniels v. Williams,* 474 U.S. 327, 330–331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Application of the foregoing rule "to substantive violations of the Constitution, such as the Fourth Amendment ..., however, is an entirely different matter." *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 871 (7th Cir.1983). The requirement to plead and to prove the inadequacy of state-law remedies does not apply where substantive guarantees of the Constitution are alleged to be violated. *Id.* Consequently, Newsome need not plead and prove the inadequacy of state-law remedies in order to pursue a claim for the violation of his Fourth Amendment rights. *Id.*

shot Nila with the tranquilizer gun. After doing so, he told two individuals to inform Sheriff's Deputies that he was going to administer a second dose. (*Id.*). Shortly thereafter, Newsome discovered Nila near the barn from which she had escaped, and Sheriff's Deputies prevented him from giving her the second shot, even though the lioness had jumped back inside her fence. (*Id.*). The Deputies informed Newsome that "[t]he order was to kill her." (*Id.*). A few minutes later, a Sheriff's Deputy allegedly walked up to the tranquilized animal and shot her in the head. (*Id.*). After the shooting, Erwin and his Deputies laughed at Newsome and threatened him with arrest if he left his property. (*Id.* at 9). Construed most strongly in Newsome's favor, the foregoing facts suggest that Erwin personally directed and ordered the needless shooting of the lioness, in violation of the Fourth Amendment. In the context of the Defendants' Rule 12(b)(6) Motion, the Court cannot say that Newsome will be unable to prove any set of facts in support of his claim that would entitle him to relief against Erwin. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993). A trier of fact certainly could find, based on Newsome's allegations, that Erwin was *directly* involved in the violation of his constitutional rights. Consequently, the Court concludes that Newsome's Complaint states a viable § 1983 claim against Erwin, even though he did not actually shoot the lioness.

■ Having concluded that Newsome's Complaint states a cause of action, the Court turns now to Erwin's qualified immunity defense. The Sixth Circuit has held that, in appropriate cases, qualified immunity may provide a proper basis to dismiss a complaint for failure to state a claim upon which relief may be granted. *Levin v. Childers*, 101 F.3d 44, 48 (6th Cir.1996); *Jackson v. City of Columbus*, 194 F.3d 737, 748 (6th Cir.1999). To overcome Erwin's qualified immunity defense,

Newsome must allege facts establishing: (1) that Erwin violated a clearly established constitutional right; and (2) that a reasonable official would have known that his or her conduct violated this right. *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir.1999).

■ With respect to the first requirement, an individual's right to be free from the unreasonable seizure of property is one of the most fundamental and clearly established of all constitutional rights. Furthermore, it has been clearly established since 1984 that a seizure of property occurs when "there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). It has also been clearly established since 1984 that the destruction of property may qualify as meaningful interference constituting a seizure under the Fourth Amendment. *Id.* at 124, 104 S.Ct. 1652. Based on the reasoning set forth more fully, *supra*, a trier of fact could find that Erwin *directly* violated Newsome's clearly established Fourth Amendment right to be free from unreasonable seizures.

With respect to the second requirement, the Court concludes, based upon the allegations in Newsome's Complaint, that a reasonable officer would have known that shooting Nila, or ordering that shooting, violated the Fourth Amendment's prohibition against unreasonable seizures. It cannot be disputed that any pet, even a lioness, is property, and that shooting and killing a pet constitutes "destruction" of that property, thereby qualifying as a "seizure" under the Fourth Amendment. *Id.* In addition, the Court cannot say that a reasonable officer *would not* have known that shooting a tranquilized lioness in the head, from point-blank range, while the animal was only feet from its barn consti-

tutes an "unreasonable" seizure in violation of the Fourth Amendment. *Cf. Fuller v. Vines,* 117 F.3d 1425, 1997 WL 377162 (9th Cir. July 7, 1997) (citing the Supreme Court's ruling in *Jacobsen, supra,* to support the proposition that, prior to 1991, it was clearly established that shooting and killing a dog could constitute an unlawful seizure under the Fourth Amendment). In short, the Court concludes that Newsome has alleged facts that *could* entitle him to relief for the violation of his Fourth Amendment right to be free from unreasonable seizures. He also has alleged facts that *could* defeat Erwin's qualified immunity defense.

Under different circumstances, a law enforcement officer might well be justified or, at a minimum, might reasonably believe that he is justified, in shooting and killing a loose exotic animal, even one that is a pet. Indeed, if Newsome had alleged that Nila was killed as she prowled the neighborhood, the Court likely would reach a different result herein. A frightened, exotic animal on the loose unquestionably poses a public danger and, under certain circumstances, might need to be destroyed. In the present case, however, Newsome alleges that he first shot Nila with a tranquilizer just one-sixteenth of a mile from a barn to which she was re-

turning. Minutes later, she was observed under a tree near the barn. At that point, Sheriff's Deputies allegedly prevented Newsome from administering a second dose of the tranquilizer, stating that "[t]he order was to kill her." According to Newsome, a Deputy then fired at Nila with a high-powered rifle but missed. Five minutes later, a Deputy allegedly walked up to the animal, which already had dropped due to the effect of the first tranquilizer dose, and shot her in the head from point-blank range. This shooting allegedly took place within feet of the barn from which Nila had escaped and to which she was returning. Under *these* facts, a reasonable officer would have known that the shooting, or the ordering of such a shooting, constituted an unlawful seizure of property in violation of the Fourth Amendment. Consequently, the Court cannot say that Erwin is entitled to qualified immunity, based upon the allegations in Newsome's Complaint.[10]

Based on the reasoning and citation of authority set forth above, the Defendants' Rule 12(b)(6) Motion to Dismiss (Doc. # 19) is hereby overruled, insofar as it relates to Newsome's § 1983 claim against Sheriff Jerry Erwin. Although Newsome has not stated a viable § 1983 claim against Erwin, based upon a violation of

---

**10.** Ultimately, the evidence might reveal that Erwin did not observe the shooting, that he did not order the shooting under the circumstances alleged in Newsome's Complaint, or that he could not have stopped the shooting. In the context of the Defendants' Rule 12(b)(6) Motion, however, the Court must accept the Newsome's allegations as true and must construe them most strongly in his favor. With those standards in mind, the Court cannot say, at this time, that Erwin is entitled to qualified immunity. *Cf. Jackson v.. City of Columbus,* 194 F.3d 737, 748 (6th Cir.1999) ("Because no discovery has yet taken place and the defense of qualified immunity is not clear cut, we find it inappropriate to resolve this issue at the present stage of the case.");

*Black v. Coughlin,* 76 F.3d 72, 76 (2d Cir. 1996) (recognizing that the defense of qualified immunity cannot always be decided as a matter of law); *Sutton v. United States,* 819 F.2d 1289, 1299 (5th Cir.1987) ("Trial courts ought not try to deal with [qualified immunity] on motions under F.R.Civ.P. 12(b), when the proper disposition of the case requires some factual development by the parties."); 2 JAMES MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[4][b] & n. 56 (3d ed. 1998) ("Defenses that require a factual review to be established (as ordinarily occurs with qualified immunity, for example) should not support a dismissal for failure to state a claim.").

the Eighth or Fourteenth Amendments, he has stated a viable § 1983 claim against Erwin, based upon a violation of the Fourth Amendment. The Defendants' Rule 12(b)(6) Motion to Dismiss (Doc. # 19) is hereby sustained, however, insofar as it relates to Newsome's § 1983 claim against County Administrator Steve Stapleton. Newsome's Complaint is devoid of allegations that Stapleton was involved in the shooting of the lioness, and Stapleton had no supervisory authority over Erwin. Finally, the Report and Recommendations (Doc. # 37) and Supplemental Report and Recommendations (Doc. # 42) filed by the Magistrate Judge are hereby adopted in part and rejected in part. The Court adopts the Report and Recommendations and the Supplemental Report and Recommendations, insofar as the Magistrate Judge concludes that Newsome has failed to state a viable § 1983 claim against either Stapleton or Erwin, based upon a violation of the Eighth or Fourteenth Amendments. The Court rejects the Report and Recommendations and Supplemental Report and Recommendations, however, insofar as the Magistrate Judge concludes that Erwin is entitled to the entry of judgment in his favor. As set forth more fully above, Newsome's Complaint states a viable § 1983 claim against Erwin, based upon a violation of the Fourth Amendment.

## II. *Other Matters*

Several other matters are pending before the Court. The first is a Motion for an Interlocutory Appeal (Doc. # 8-2) filed by Newsome. In this Motion, Newsome appears to challenge the Magistrate Judge's overruling of his Motion for Denial of Extension of Time.[11] (*See* Doc. # 8-1). Consequently, the Court will construe Newsome's Motion as Objections to that Order. The Magistrate Judge overruled Newsome's Motion for Denial of Extension of Time, as moot, because the extension was granted before Newsome filed his Motion opposing the same.[12] Upon review, the Court discerns no error in the Magistrate Judge's ruling. Accordingly, Newsome's Motion for an Interlocutory Appeal (Doc. # 8-2), which the Court has construed as Objections, is hereby overruled.

Also pending before the Court is a Motion for a Temporary Restraining Order (Doc. # 33) filed by Newsome. In support of his Motion, Newsome alleges:

2. On or about Sunday November 28, 1999, two Sheriff's vehicles came upon plaintiff's area and sit there for several minutes. Plaintiff called Channel 7 News and let them know. Plaintiff is concerned for himself and his animals, because of all the threats that the Sheriff[f's] Department has made. And the murder of the lioness. The violent nature of these defendants is on a news tape by Channel 7 News. The tape was edited for television and was shown in many parts of this country. There is also many interviews given to defendant Erwin in which he outright lies to the media. The Sheriff has told Chuck Hamlin and Reg Chapman plaintiff robbed a Post Office. An outright lie and discriminating. Both of these newsmen work for Channel 7 News. The

---

11. On October 19, 1999, Newsome filed a document styled, "Motion Requesting a Denial of Extension of Time or in the Alternative an Interlocutory Appeal" (Doc. # 8). On July 24, 2000, the Magistrate Judge overruled the first branch of Newsome's Motion, regarding his opposition to the Defendants' request for an extension of time to respond to his Complaint. (*See* Doc. # 49).

12. Although the Magistrate Judge granted the Defendants' Motion for an Extension of Time to Answer just one day after said Motion was filed (*See* Notation Entry, Doc. # 4), the Court discerns no real prejudice to Newsome.

news media cannot get the marksman's name who is a defendant in this case, no one can. Not even the F.R.C.P.

Wherefore plaintiff request the T.R.O. or for defendants to "Show Cause." Also plaintiff request the contents of this case be turned over to the local F.B.I. and U.S. Attorney's Office for serious Civil Rights Violations including attempted murder of plaintiff.

(Doc. # 33 at 1–2).

Having reviewed Newsome's Motion, the Court cannot identify the specific conduct that he wishes to restrain. In addition, Newsome fails to make any showing of irreparable harm, as required to obtain a temporary restraining order. *See Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir.1996). Accordingly, his Motion for a Temporary Restraining Order (Doc. # 33) is hereby overruled.

Also pending before the Court are Newsome's Objections (Doc. # 38) to an Order of the Magistrate Judge (Doc. # 34). In that Order, the Magistrate Judge overruled Newsome's Motion to Stay an Order to Show Cause under Fed.R.Civ.P. 11, pending an appeal to the undersigned Judge (Doc. # 32). In denying the Motion to Stay his show-cause Order, the Magistrate Judge reasoned, in relevant part:

In requesting the Stay, Plaintiff continues to demand that the Court impose a bond on the Defendants and to assert that the Magistrate Judge and defense counsel are subject to a monetary penalty because no such bond has been imposed. Plaintiff cites no authority for the imposition of such a bond except for his own esoteric reading of Fed.R.Civ.P. 67. That Rule does not purport to impose a requirement for a bond in all civil cases; it merely sets the procedure to be followed when a bond is required. Plaintiff cites no authority at all for the proposition that a judicial officer who does not impose such a bond or a defense attorney who does not acquiesce in one or post one without an order is subject to being fined.

(Doc. # 34).

In his Objections to the foregoing ruling, Newsome continues to assert his belief that a bond should be ordered. (Doc. # 38 at 1). In addition, Newsome explains that he is not attempting to violate Rule 11. Rather, he is attempting to access the Court, pro se, to remedy several wrongs that he believes he has suffered at the hands of the Greene County Sheriff's Department, most notably the shooting of his lioness, Nila. In relevant part, Newsome explains:

... This Plaintiff has no vehicle, no access to a law library. Can only depend on neighbors who are afraid of reprisals. Plaintiff is not complaining only stating facts. Plaintiff lives in a barn with no heat which burnt in a fire in 1996. My family (animals) live with me. It [is] all I have left and a few materialistics out of the fire. I live like a recluse, but do not complain. The love my animals (family) give me is enough. Nila, Joshua, Margarite, Sclkit, and the 3 dogs slept together with me until Nila was shot. My life will never be the same nor the other animals[.]

(Doc. # 38 at 3).

Elsewhere in his Memorandum, Newsome states that he "is not an attorney, but has a right to voice his opinions without sanctions or abuse of authority by a Magistrate." (*Id.* at 4). Finally, he asks the Court to consider his response to the Magistrate Judge's "sanctions," stressing that he is not an attorney and that he has no money. (*Id.* at 8).

Upon review, the Court will overrule Newsome's Objections (Doc. # 38) to the Magistrate Judge's Order Denying a Stay of the show-cause Order. For Newsome's benefit, however, the Court wishes to

stress that the Magistrate Judge *did not* actually impose any sanctions on him. Rather, the Magistrate Judge first directed him to "show cause," or to explain, why sanctions should not be imposed. In his December 3, 1999, Order (Doc. # 34), the Magistrate Judge then refused to stay the Order directing Newsome to explain why he should not be sanctioned. The Magistrate Judge is entitled to require such an explanation. Consequently, if Newsome wants to avoid Rule 11 sanctions, he should immediately file a Response with the Magistrate Judge, explaining why he does not believe sanctions are appropriate.

Finally, with respect to Newsome's assertion that a bond should be required, the Court adopts the reasoning of the Magistrate Judge. Although Newsome certainly has a right to express his opinions as a pro se litigant, he is simply incorrect in his belief that the Magistrate Judge is violating the law by not ordering a bond.