IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 18, 2002 Session

## CHARLES P. IVEY, ET AL. v. PAT HAMLIN, ET AL.

**Appeal from the Circuit Court for Cheatham County**
**No. 5238     Robert E. Burch, Judge**

---

**No. M2001-01310-COA-R3-CV - Filed June 7, 2002**

---

This is an action for damages for the deliberate killing of a dog by a Deputy Sheriff. The owner of the dog claims damages under 42 U.S.C. Section 1983 for the alleged violation of his 14th Amendment rights, the witnesses to the shooting sue for damages for the infliction of emotional distress. The motion of the Deputy and the County for summary judgment was denied.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which, WILLIAM C. KOCH, JR. and PATRICIA J. COTTRELL, J.J., joined.

Daniel W. Cook, Ashland City, Tennessee, and Michael E. Evans, Nashville, Tennessee, for the Appellants, Pat Hamlin and Cheatham County, Tennessee.

J. Todd Faulkner, Nashville, Tennessee, for the Appellees, Charles P. Ivey, Karolina Windorfer, Ernestine O'Guin and Maria Pennington.

### OPINION
### I.

This is an action for compensatory and punitive damages brought by the owner of an English bulldog against a Deputy Sheriff and his employer, Cheatham County, for shooting the dog. Two witnesses to the deliberate killing, the plaintiffs Windorfer and O'Guin, seek punitive and compensatory damages for the infliction of emotional distress allegedly attributable to the outrageous conduct of the Deputy. The plaintiff Ivey alleges that the execution of his pet by the Deputy, acting under color of law, caused him severe anguish, and violated his due process rights under 42 U.S.C. Section 1983. The defendants denied the allegations of the complaint, as amended, and filed a Rule 12 Motion to Dismiss supported by the affidavit of Deputy Hamlin. The plaintiffs filed no responsive materials to the Rule 12 Motion, which was treated as a motion for summary judgment.

It is familiar law in this jurisdiction that the allegations of a complaint cannot be considered in the disposition of a properly supported motion for summary judgment. Rule 56.06 Tenn. R. Civ. P. We note that the trial judge repeatedly referenced the allegations of the complaint in overruling the Motion to Dismiss[1], and therefore erred to the extent the allegations of the complaint, as amended, affected the disposition of the motion.

By affidavit, Deputy Hamlin testified that Ms. Janie Binkley on three occasions called the Sheriff's Office to complain about a dog "running loose and terrorizing her family." The occasions were September 11, October 13, and October 23, 2000.

On the first occasion, Deputy Hamlin could not locate the dog.

On the second occasion, Deputy Hamlin drove around the neighborhood and saw a bulldog on the porch of the residence of Mr. Ivey. The dog had no collar, and when approached by Deputy Hamlin, it acted in an aggressive manner. Three days later, Deputy Hamlin encountered plaintiff Ivey at a local market and told him about the Binkley complaints, to which no reply was made. Significantly, Mr. Ivey did not acknowledge ownership of the dog.

On the third occasion, Deputy Hamlin responded to Ms. Binkley's complaint and located the dog in an adjoining yard. There were three ladies present and Deputy Binkley told them that he was there to kill the dog and asked them to go inside the house. One of them asked him to wait until Mr. Ivey came home and he would "put the dog up." Deputy Hamlin refused and shot the dog, and dragged the body to nearby woods. It was the dog identified by Ms. Binkley, and, as before, had no collar.

The issue on appeal, as we perceive it, is whether the unrebutted testimony of Deputy Hamlin presented undisputed facts which entitled him to qualified immunity as a matter of law.

## II.
## The Standard of Review

The standards for reviewing summary judgments on appeal are well settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably

---

[1]Which would have been entirely proper in a Rule 12 proceeding; the defendants filed the affidavit of Deputy Hamlin in support of their Motion to Dismiss which the trial court, as stated, correctly treated as a motion for summary judgment. *Poling v. Goins*, 713 S.W.2d 305 (Tenn. 1986). Since the plaintiffs failed to respond to the properly supported Motion for Summary Judgment any factual dispute is precluded. *Parker v. Vanderbilt Univ.*, 769 S.W.2d 412 (Tenn. Ct. App. 1988).

drawn from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto, Ins. Co.*, 49 S.W.3d 265 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Goodloe v. State*, 36 S.W.3d 62, 65 (Tenn. 2001).

Summary judgments enjoy no presumption of correctness on appeal. *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

## III.
## The Qualified Immunity Defense

The courts fashioned the defense of qualified immunity for governmental officials facing civil rights suits to strike a balance between society's interest in safeguarding citizens' constitutional rights and the ability of public officials to perform their duties. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034, 3039 (1987); *Davis v. Scherer*, 468 U.S. 183, 195, 104 S. Ct. 3012, 3019 (1984). While civil actions for damages may be a citizen's only recourse to vindicate his or her constitutional rights when public officials abuse their power, *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S. Ct. 2727, 2736 (1982), harassing litigation and the possible exposure to personal liability will unduly inhibit public officials in the good faith performance of their duties. *Anderson v. Creighton*, 483 U.S. at 638, 107 S. Ct. at 3038; *Harlow v. Fitzgerald*, 457 U.S. at 814, 102 S. Ct. at 2736.

The defense of qualified immunity is available to public officials whose conduct conforms to a standard of objective legal reasonableness. *Anderson v. Creighton*, 483 U.S. at 639, 107 S. Ct. at 3038; *Harlow v. Fitzgerald*, 457 U.S. at 819, 102 S. Ct. at 2739. Under this standard, governmental officials performing discretionary functions will be shielded from liability for civil damages as long as their conduct does not violate the clearly established constitutional or statutory rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S. Ct. at 2738; *Payne v. Breuer*, 891 S.W.2d 200, 202 (Tenn. 1994); *Fann v. Brailey*, 841 S.W.2d at 835. In order for a statutory or constitutional right to be "clearly established," its contours must be so clear that a reasonable official would understand that what he or she is doing violates that right. *Anderson v. Creighton*, 483 U.S. at 640, 107 S. Ct. at 3039. In other words, the unlawfulness of the

act must be apparent in light of the pre-existing law. *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 1097-98 (1986); *Davis v. Scherer*, 468 U.S. at 191, 195, 104 S. Ct. at 3017, 3019.

When the qualified immunity defense is raised in the context of a summary judgment motion, the appellate courts review orders denying the motion *de novo*. *Rogers v. Jabe*, 43 F.3d 1082, 1085 (6th Cir. 1995). We turn our attention first to whether the plaintiff has stated a claim under 42 U.S.C. § 1983 (1994) before determining whether qualified immunity should attach. *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995). If the plaintiff has articulated a violation of a clearly established right, we then proceed to determine whether the defendant's conduct violated that right. *McLaurin v. Morton*, 48 F.3d 944, 947 (6th Cir. 1995). In order for a right to be "clearly established," the law must be clear with regard to the defendant's particular actions in the particular circumstances of the case. *Black v. Parke*, 4 F.3d 442, 445 (6th Cir. 1993). We have concluded that the plaintiff Ivey has failed to establish a claim under 42 U.S.C. § 1983.

## IV.
## The Claim of Emotional Distress

The plaintiffs Windorfer and O'Guin allege that Deputy Hamlin, by his own voluntary testimony, was guilty of intentional infliction of emotional distress because of his outrageous conduct. This tort is recognized in Tennessee, and can be litigated (1) if the conduct of the defendant has been so outrageous in character and so extreme in degree as to be beyond the pale of decency and is to be regarded as atrocious and intolerable in a civilized society, and (2) if the conduct was intentional and results in serious mental distress. *Dunn v. Moto Photo Inc.*, 828 S.W.2d 747 (Tenn. Ct. App 1991); *Lawrence v. Stanford,* 655 S.W.2d 927 (Tenn. 1983).

According to Deputy Hamlin he was performing his duty as a peace office in locating and killing the dog in the manner heretofore described. His actions were calculated and deliberate, and he asked the plaintiffs Windorfer and O'Guin to go into the house while he performed his perceived duty. They declined to do so. Under these circumstances, we conclude that the actions of the Deputy were not so atrocious as to be beyond the pale of decency and intolerable in a civilized society. *Dunn, supra; Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Miller v. Willbanks*, 8 S.W.3d 607 (Tenn. 1999). It was held in *Moorhead v. J. C. Penney Co. Inc.*, 555 S.W.2d 713 (Tenn. 1977) that the quoted standards of "extreme and outrageous," and "not tolerated in a civilized society," are variables based upon the common sense of the community, primarily for application by a jury. We have considered the issue at length, and when the apparent aggressiveness and insensitiveness of the Deputy are balanced against his perceived duty as a peace officer our conclusion that his conduct was not so atrocious as to be beyond the pale of decency is reinforced. We accordingly find that the court erred in failing to grant the motion of the defendants for summary judgment as to the plaintiffs Windorfer and O'Guin.

## V.
## The Issue of Conversion and Due Process

The plaintiff Ivey alleges that his dog was maliciously executed by Deputy Hamlin whose actions constitutes conversion and is therefore actionable. The purported issue of the equitable and venerable doctrine of conversion is not implicated in this case and we need not further notice it other than to observe that an element of conversion requires proof that Deputy Hamlin appropriated the dog to his own use. ***Barger v. Webb***, 391 S.W.2d 664 (Tenn. 1965). There is no proof in the record that Deputy Hamlin appropriated the dog to his own use.

## VI.
## The Issue of Due Process

The plaintiff Ivey alleges that Deputy Hamlin was acting under color of state law when he killed the dog.

42 U.S.C.A. § 1983 provides:

> **§ 1983.  Civil action for deprivation of rights**
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

It is clear from Deputy Hamlin's testimony that he was acting under color of state law when he executed the dog. It is also clear that his actions were based on the complaints of Ms. Binkley in addition to his personal encounter with the aggressive dog.

The statutory scheme provided by Tenn. Code Ann. §§ 68-8-104 *et seq.* is relevant in part to the circumstances of this case. As pertinent here, these statutes provide:

> **68-8-107.  Rabies tag must be worn. –** Every dog owner shall attach a metal tag or other evidence of vaccination to a collar which shall be worn at all times by the dog vaccinated; provided, that the collar may be removed in the case of hunting dogs while in chase or returning

from the chase. But nothing herein shall be construed as permitting the use of an unvaccinated dog in either the hunt or chase.

**68-8-108. Seizure of dogs running at large – Redemption by owner. –**(a) Any dog found running at large may be seized by the proper health officers or by any peace officer and placed in a dog pound in counties or cities where a dog pound is available.

 (b)(1) If the dog is wearing a tag, the owner shall be notified by a postcard addressed to the owner's last known mailing address to appear within five (5) days and redeem the owner's dog by paying a pound fee of one dollar and fifty cents ($1.50), or the dog will be destroyed.

 (2) If the dog is not wearing a tag, the dog shall be destroyed, unless legally claimed by the owner within two (2) days.

 (c) No dog shall be released in any event from a pound unless and until it has been vaccinated and a tag placed on its collar.

Cheatham County does not have a dog pound or similar facility, and thus the defendant Hamlin was confronted with a circumstance requiring that, as a peace officer, he exercise an appropriate degree of judgment and discretion. The statutory scheme required him to seize the collarless dog and confine it; he did not do so for the reason that the County had no impound facilities and he insists that this asserted "Catch-22" situation justified its summary execution, in light of these facts: after the second complaint by Ms. Binkley that the dog was terrorizing the neighborhood, Deputy Hamlin found the dog on the porch of Mr. Ivey's house, and observed that it was collarless and without identification. He retreated when the dog became aggressive. Deputy Hamlin was acquainted with Mr. Ivey, who, when asked, did not acknowledge that the dog belonged to him.

The majority of jurisdictions which have addressed the due process claim have concluded that killing a pet does not give rise to a 42 U.S.C. § 1983 claim. Virtually every court that has addressed this issue has concluded that shooting a pet animal does not give rise to a 42 U.S.C. § 1983 claim premised on a violation of the Due Process Clause of the Fourteenth Amendment. *See, e.g.,* ***Brown v. Muhlenberg Township***, 269 F.3d at 213-14; ***Bell v. City of Louisville***, No. 3:00CV-311-S, 2000 U. S. Dist. LEXIS 21674, at *23-28 (W.D. Ky. Nov. 6, 2000); ***Newsome v. Erwin***, 137 F. Supp. 2d 934, 943 n.9 (S.D. Ohio 2000); ***Attama v. Police Officer Troy Crawley***, N. 99-434, 1999 U.S. Dist. LEXIS 7758 (E.D. Penn. May 20, 1999). Instead, the overwhelming majority of cases recognize that if a claim exists, it is for an unreasonable governmental seizure of personal property in violation of the U. S. Const. amend. IV. *See, e.g.,* ***Brown v. Muhlenberg Township***, 269 F.3d at 209-212; ***Fuller v. Vines***, No. 96-15842, 1997 U.S. App. LEXIS 17199 at *2-3 (9th Cir. July 7, 1997); ***Newsome v. Erwin***, 137 F. Supp. 2d at 940-943.

The dog's owner has not specifically asserted an unreasonable governmental seizure claim in the amended complaint. There is no language in the amended complaint from which such a claim can even be inferred. Further, the complaint does not allege a common law action.

Finally, we note that the consensus among the courts is that a vicious dog is a public nuisance and that governments and their agents have broad power to protect the public from these animals. ***Sentell v. New Orleans & Carrollton R.R.***, 166 U.S. 698, 705, 17 S. Ct. 693, 696 (1897); ***Coleman v. Minor***, 82 So. 42, 43 (Ala. Ct. App. 1919). Accordingly, most courts have held that a vicious dog may be lawfully killed when it is roaming at large and endangering the safety of persons or property. ***Kautzman v. McDonald***, 621 N.W.2d 871, 878 (N.D. 2001); ***City of Garland v. White***, 368 S.W.2d 12, 16 (Tex. Civ. App. 1963); ***Willeroy v. Commonwealth***, 27 S.E.2d 211, 212 (Va. 1943). A law enforcement officer has the authority to shoot a dog if he or she reasonably believes that the dog is vicious and roaming at large and that it poses an imminent danger to persons or property.

The courts have recognized that officers are required to make split-second judgments under circumstances that are tense, uncertain, and rapidly evolving. ***Saucier v. Katz***, 533 U.S. 194, 204-05, 121 S. Ct. 2151, 2158 (2001); ***Graham v. Connor***, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 1872 (1989). Accordingly, the qualified immunity defense is intended to balance the citizens' statutory and constitutional rights against the reality that few persons will enter public service if such service entails the risk of personal liability for one's official decisions. ***Donovan v. City of Milwaukee***, 17 F.3d 944, 947 (7th Cir. 1994).

The qualified immunity doctrine strikes this balance by providing that government officials engaged in discretionary activities will be shielded from personal liability from civil damages as long as their conduct does not violate the clearly established constitutional or statutory rights of which a reasonable person would have known. ***Harlow v. Fitzgerald***, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). The qualified immunity doctrine acknowledges that reasonable mistakes can be made. ***Saucier v. Katz***, 533 U.S. at 205, 121 S. Ct. at 2158. Accordingly, rather than judging an officer's conduct using 20/20 judicial hindsight, we must judge the conduct using a more objective standard. That standard must be from the perspective of a reasonable officer on the scene. ***Graham v. Connor***, 490 U.S. at 396, 109 S. Ct. at 1872; ***City of San Antonio v. Hernandes***, 53 S.W.3d 404, 408 (Tex. App. 2001). Thus, where officers of reasonable competence disagree about the challenged conduct, immunity should be recognized. ***Gibson v. Rich***, 44 F.3d 274, 277 (5th Cir. 1995). Only the plainly incompetent officers or those officers who knowingly violate the law are not protected by the qualified immunity doctrine. ***Malley v. Briggs***, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986).

When a defendant asserts a qualified immunity defense in a 42 U.S.C. § 1983 action, the burden is on the plaintiff to show that the rights he or she is asserting have been clearly established. ***Perkins v. City of West Covina***, 113 F.3d 1004, 1008 (9th Cir. 1997); ***Pueblo Neighborhood Health Ctrs. v. Losavio***, 847 F.2d 642, 645 (10th Cir. 1988); ***Newsome v. Erwin***, 137 F. Supp. 2d at 944; ***Helms v. Gamet***, 828 F. Supp. 819, 822 (D. Colo. 1993). Determining whether a right is "clearly established" depends on the level of generality at which the right is identified. For the purpose of actions under 42 U.S.C. § 1983, the right allegedly violated must be defined at an appropriate level of specificity before a court can determine whether it is clearly established. ***Wilson v. Layne***, 526 U.S. 603, 614-15, 119 S. Ct. 1692, 1699 (1999).

For all of the foregoing reasons we hold that the trial judge erred in failing to grant the motion for summary judgment of the defendants as to the plaintiff Ivey.

The judgment is reversed and the cases are dismissed at the costs of the appellees.

_____

WILLIAM H. INMAN, SENIOR JUDGE