**Morris RODGERS, Plaintiff–Appellee,**

v.

**John JABE, Jerry Hofbauer, and Robin Pratt, in their individual and official capacities, Defendants–Appellants.**

No. 93–2323.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 14, 1994.

Decided Jan. 12, 1995.

Morris Rodgers (briefed), Jackson, MI, Daniel E. Manville (argued and briefed), Detroit, MI, for plaintiff-appellee.

Terry Norton, Asst. Atty. Gen., Luann Cheyne Frost (briefed), Katharyn A. Barron (argued), Office of the Atty. Gen., Corrections Div., Lansing, MI, for defendants-appellants.

\* The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee, sitting by designation.

Before: RYAN and BATCHELDER, Circuit Judges; and EDGAR, District Judge.\*

RYAN, Circuit Judge.

The plaintiff, Morris Rodgers, sued the defendants under 42 U.S.C. § 1983 for allegedly denying him adequate outdoor exercise, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Rodgers also sued on two other claims, relating to his placement in administrative segregation and his right of access to counsel. The district court granted summary judgment on all three counts for defendant John Jabe. For defendants Jerry Hofbauer and Robin Pratt, however, the district court granted summary judgment on only the administrative segregation and access to counsel claims. Rodgers has brought no appeal. Hofbauer and Pratt, in their individual and official capacities, appeal the district court's denial of their motion for summary judgment on the Eighth Amendment claim based on qualified immunity.[1]

We hold that the defendants were entitled to qualified immunity because the amount of exercise to which prisoners had a right was not clearly established at the time of the defendants' actions.

## I.

Rodgers is an inmate at the State Prison of Southern Michigan (SPSM) in Jackson, Michigan. Rodgers was transferred from Ionia Maximum Correctional Facility to SPSM on August 29, 1991, in order to receive mental health treatment. While at Ionia, the plaintiff was in administrative segregation; when he was transferred to SPSM, he retained administrative segregation status. However, on September 2, 1991, the plaintiff was placed in "punitive" segregation, or "detention," and remained in punitive segregation until March 10, 1992. Punitive segregation was imposed due to "major misconduct" violations committed by the plaintiff. Also, the defendants claim that Rodgers was under

1. Although Jabe is listed on the notice of appeal, he presents no assignments of error because he won complete dismissal below.

a "loss of privileges" sanction, in addition to the punitive segregation sanction; however, the plaintiff denies he had lost privileges.

On April 21, 1992, the plaintiff brought a *pro se* § 1983 action against John Jabe, the warden of SPSM; Jerry Hofbauer, the deputy warden of SPSM; and Robin Pratt, the assistant deputy warden of SPSM, in their individual and official capacities. We are concerned only with Rodgers's allegation that the defendants inflicted cruel and unusual punishment on Rodgers by denying him out-of-cell exercise for at least one hour per day, five days a week. Pursuant to Michigan regulations and Michigan Department of Corrections (DOC) policy directives, a prisoner in punitive segregation is afforded out-of-cell exercise one hour per day, five days a week—but only every thirty days. The defendants moved for dismissal for failure to state a claim and, in the alternative, for summary judgment based on qualified immunity.

The district court referred the case to a magistrate judge. The magistrate judge dismissed two of the other counts in the complaint, and the plaintiff has not appealed those dismissals. On the remaining count, the magistrate judge dismissed Warden Jabe as a defendant because he was neither directly and personally involved with Rodgers nor was he liable under a theory of supervisory liability. However, as to defendants Hof-

bauer and Pratt, the magistrate judge denied summary judgment based on qualified immunity. The magistrate judge concluded that, under normal circumstances, denying a prisoner out-of-cell exercise for one hour per day, five days a week, violated the Eighth Amendment. The magistrate judge refused to grant summary judgment for the defendants because: (1) factual issues remained regarding the constitutional sufficiency of permitting only five days exercise every thirty-seven days over a six and one-half month span; and (2) assuming constitutional sufficiency, a factual dispute remained regarding whether Hofbauer and Pratt even permitted that amount of exercise. Most importantly, the magistrate judge denied qualified immunity because the relevant law was "clearly established" by August 29, 1991.

Hofbauer and Pratt objected to the magistrate judge's report and recommendation. Before the district court, the defendants produced daily "Special Housing Unit" records that purported to show on which dates Rodgers was permitted to exercise. The records indicate that on some dates, marked by a "Y" in the "exercise" category, Rodgers exercised; on others, marked by a "R," Rodgers refused to exercise; on most, marked by a "N," Rodgers was not permitted to exercise. A summary of the time periods in which Rodgers had some exercise reveals the number of days that elapsed between exercise:[2]

**Detention Began:** 09/02/91

| | | | |
|---|---|---|---|
| 09/18/91: Y | 09/26/91: Y | 10/14/91: N | 10/18/91: Y |
| 09/21/91: R | 10/01/91: Y | 10/15/91: Y | 10/19/91: Y |
| 09/22/91: Y | 10/06/91: Y | 10/16/91: Y | 10/20/91: Y |
| | 10/17/91: N | 10/27/91: Y | |
| 11/17/91: N | 11/22/91: Y | 12/25/91: Y | 12/29/91: Y |
| 11/18/91: N | 11/23/91: Y | 12/26/91: N | 12/30/91: N |
| 11/19/91: Y | 11/24/91: Y | 12/27/91: Y | 12/31/91: Y |
| 11/20/91: Y | 11/25/91: N | 12/28/91: Y | 01/01/92: Y |
| 11/21/91: N | 11/26/91: Y | | |
| 02/02/92: Y | 02/05/92: Y | | |
| 02/03/92: N | 02/06/92: blank | | |
| 02/04/92: Y | 02/07/92: N | | |
| | 02/08/92: R | | |

**Detention Ended:** 03/10/92

The district court adopted the magistrate judge's report and recommendation in full. Hofbauer and Pratt filed this timely appeal.

2. Any date not listed was marked "N" for no exercise.

## II.

The defendants argue that, as of August 29, 1991, a prisoner serving disciplinary detention possessed no clearly established right to exercise out-of-cell one hour per day, five days a week in a thirty-seven day period. The defendants point out that the magistrate judge and the plaintiff relied on several decisions from other circuits, and that we rarely rely on decisions outside the Sixth Circuit to find a "clearly established" right.

### A.

■■■ A denial of summary judgment on the basis of qualified immunity is appealable. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The issue of qualified immunity presents a question of law for the district court; thus, on appeal, we consider the issue *de novo. Hall v. Shipley,* 932 F.2d 1147, 1150 (6th Cir. 1991). Summary judgment is only appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing summary judgment motions, courts must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### B.

Although the regulatory scheme established by the relevant Michigan DOC regulations and policy directives is somewhat imprecise, the gist is discernible. First, after finding a prisoner guilty of "major misconduct," a hearing officer may sanction the prisoner with, *inter alia,* "[d]etention (punitive segregation), not to exceed 30 days for each violation or 60 days for all violations arising from a single incident," Mich.Admin.Code r. 791.5505(1)(a) (1979) (Supp.1987), or "[l]oss of privileges, not to exceed 30 days," r. 791.5505(1)(c). Detention automatically triggers a restriction on exercise; a prisoner in segregation receives "[a] minimum of one hour per day, five days per week of out-of-cell exercise, except that a *prisoner*

*confined in punitive segregation shall be provided such exercise only after being confined to punitive segregation for more than 30 consecutive days...."* Michigan Dep't of Corrections, Policy Directive 04.05.120, § II(N)(18) (1991) (emphasis added) (replacing PD–BCF–60.01). Also, loss of privileges might include an exercise restriction because Mich.Admin.Code r. 791.4405(8)(e) (1979) (Supp.1989) deems "regular out-of-cell exercise" a "privilege."

Finally, Policy Directive PD–DWA–60.01, § IV (1990), explains that

> [i]f a prisoner is serving a sanction of *detention,* toplock, *loss of privileges* or any combination of these sanctions, s/he shall not be deprived of *yard* for more than 30 consecutive days without being provided a *seven-day break* during which the prisoner will be given the opportunity for yard consistent with his/her status (e.g., ... segregation—one hour per day for five days per week).

(Emphases added.) Thus, it appears that prisoners serving more than thirty consecutive days of detention or loss of privileges are entitled to "yard" after each thirty-day period. After each thirty-day period, such prisoners are permitted to exercise one hour per day for five days out of the next seven-day period. Apparently, the exercise takes place outdoors in the "yard."

### C.

■■■ Because the defendants claim qualified immunity for their actions, the relevant question is the " 'objective legal reasonableness' of the action[s] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (citation omitted). That is, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3089. Whether the right was "clearly established" turns on the federal constitutional, statutory, and case law existing at the time of the challenged action. *Poe v. Haydon,* 853 F.2d 418, 424 (6th Cir.1988), *cert. denied,* 488

U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). We have explained:

> "[I]n the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such 'clearly established law,' these decisions must *both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer* that his conduct, if challenged on constitutional grounds, would be found wanting."

*Black v. Parke,* 4 F.3d 442, 445 (6th Cir.1993) (alteration in original) (emphasis added) (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter,* 858 F.2d 1171, 1177 (6th Cir.1988)). The law of the highest court in the state may also be considered. *Robinson v. Bibb,* 840 F.2d 349, 351 (6th Cir.1988).

### D.

An Eighth Amendment claim comprises an objective and subjective component: (1) a sufficiently grave deprivation, such as serious medical needs; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). A prison's conditions of confinement are sufficiently grave if they fall beneath "the minimal civilized measure of life's necessities" as measured by a "contemporary standard of decency." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). A prison official inflicting such conditions acts with a sufficiently culpable state of mind if he does so with "deliberate indifference." *Wilson,* 501 U.S. at 303, 111 S.Ct. at 2326.

### 1.

The Sixth Circuit has twice addressed restrictions on a prisoner's leeway to exercise; however, neither case specifically set a minimum amount of exercise required in order to avoid violating the Eighth Amendment's objective component. In *Patterson v. Mintzes,* 717 F.2d 284 (6th Cir.1983), an inmate at SPSM was assigned to segregation upon his arrival; he remained there for forty-six days without an opportunity to exercise. *Id.* at 289. The inmate sued SPSM officials for violating his Eighth Amendment rights. We reversed the district court's entry of summary judgment for the defendants. The court explained: "It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees. Inmates require regular exercise to maintain reasonably good physical and psychological health." *Id.* The grant of summary judgment was improper because certain facts, missing from the record, could establish a constitutional violation. For example, "the size of the cell, opportunity for contact with other inmates, time per day expended outside the cell, justifications for denial of the right to exercise, physical or psychological injuries resulting from a lack of exercise or a particularized need for exercise." *Id.* Thus, in *Patterson,* we recognized the general possibility that denial of a right to exercise could rise to the level of an Eighth Amendment violation; in addition, the court outlined factors relevant to determining the constitutionality of exercise restrictions.

Next, in *Walker v. Mintzes,* 771 F.2d 920 (6th Cir.1985), we reviewed a district court's injunction that set minimum exercise times for prisoners at three Michigan state prisons. The district court had set different minimum times for different prisons, and different times for different classes of prisoners within each prison. For prisoners in administrative segregation at SPSM, the district court had allotted thirty minutes exercise per week. We remanded the case to the district court for several reasons.

First, we wanted the district court to explain why it had afforded fewer exercise minutes to prisoners in administrative segregation. *Id.* at 927. Second, the court reminded the district court that minimum exercise times need only comport with the " *'minimal civilized measure of life's necessities.'* " *Id.* (alteration in original) (quoting *Rhodes,* 452

U.S. at 347, 101 S.Ct. at 2399). Finally, we "invite[d] the district court to consider whether yard time is constitutionally required in relation to the other types of restrictions placed on the inmates." *Id.* We explained that the Ninth Circuit, in *Spain v. Procunier,* 600 F.2d 189 (9th Cir.1979), "refused to adopt a *per se* rule that 'deprivation of outdoor exercise is a ... violation of the eighth amendment.'" *Id.* (quoting *Spain,* 600 F.2d at 199). Instead, we explained, the court in *Spain* required one hour of outdoor exercise per day, five times a week "where certain inmates were permanently confined virtually the entire day in one cell, received 'meager' outside movement, and engaged in minimal prisoner contact." *Id.* In conclusion, the court directed the district court to "be mindful of the limitations placed on each class of inmates that might restrict prisoner interaction, as well as prison security requirements, and whether restrictions are 'totally without penological justification.'" *Id.* at 928 (quoting *Rhodes,* 452 U.S. at 346, 101 S.Ct. at 2399).

Thus, once again we implicitly recognized a prisoner's general right to exercise where circumstances demand. The court was willing to allow the district court to set constitutionally required exercise times, but only if, after considering the relevant facts, the district court could justify such minimums. Although in *Walker* we referred to the one hour per day, five days a week mandate in *Spain,* we stopped far short of endorsing that amount, or indeed *any* amount, as a constitutional requirement.

Subsequent district court decisions apparently differ over the degree to which *Patterson* and *Walker* clearly established a prisoner's right to exercise. *Compare Gumpl v. Seiter,* 689 F.Supp. 754, 755 (S.D.Ohio 1987) *with Jones v. Stine,* 843 F.Supp. 1186, 1192 (W.D.Mich.1994) *and Gawloski v. Dallman,* 803 F.Supp. 103, 110 (S.D.Ohio 1992). In support of the denial of qualified immunity, the magistrate judge in this case discussed *Pressley v. Brown,* 754 F.Supp. 112 (W.D.Mich.1990). The prison policy challenged in *Pressley* is the same policy being challenged here. However, the district court in *Pressley* decided only that summary judg-ment on the *merits* was inappropriate because further inquiry was required into the facts deemed relevant in *Patterson.* As an example, the district court explained that the defendants offered no evidence of a "penological justification." *Id.* at 116.

**2.**

Both parties cite cases purporting to show how particularized the right to exercise had become in other circuits by 1992. The plaintiff primarily relies on *Spain* and *Davenport v. DeRobertis,* 844 F.2d 1310 (7th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). In *Spain,* the Ninth Circuit upheld the district court's injunction requiring that certain prisoners receive one hour of outdoor exercise per day, five days a week without recognizing an absolute right to exercise. The court explained:

> [W]e do not consider it necessary to decide whether deprivation of outdoor exercise is a per se violation of the eighth amendment. . . .
>
> There is substantial agreement among the cases in this area that some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates.

600 F.2d at 199. The court approved the district court's minimum exercise time because the plaintiffs spent almost all day in their cells, had minimum contact with others, and had been so treated for over four years. *Id.* Moreover, such confinement "was not a temporary assignment for these prisoners." *Id.* at 200.

In *Davenport,* the Seventh Circuit reviewed a district court injunction requiring that prisoners in segregation for more than ninety days receive five hours of out-of-cell exercise per week. However, the Seventh Circuit reviewed the exercise time under a "clear error" standard. The court recognized that a minimum exercise time would normally be a question of law; however, the defendants had mistakenly conceded that clear error review was proper, and the court used that standard. 844 F.2d at 1314. The Seventh Circuit's examination of cases revealed that "a failure to provide inmates ... with the opportunity for at least five hours a

week of exercise outside the cell raises serious constitutional questions." *Id.* at 1315 (citations omitted). The court concluded that the district court had "not exceeded the outer bounds of permissible interpretation of the Eighth Amendment" by setting the five hours per week requirement. *Id.* at 1316.

Finally, in *Leonard v. Norris,* 797 F.2d 683 (8th Cir.1986), the court upheld Arkansas's policy of affording no exercise to a prisoner in punitive isolation for the first fifteen days of isolation. The court in *Leonard* explained that prison officials "must have some tools available as sanctions" in order to successfully operate a prison. *Id.* at 685. Such sanctions "discourage disruptive behavior that makes an inmate unfit to circulate among the prison's general population." *Id.*

In sum, both *Spain* and *Davenport* approved lower court injunctions requiring five hours of exercise per week. In contrast, the court in *Leonard* upheld a fifteen-day exercise ban as an appropriate punitive tool.

### III.

■ As explained above, the Sixth Circuit in *Patterson* and *Walker* recognized only that restrictions on exercise may violate the Eighth Amendment under some circumstances. Although the court in *Patterson* outlined some of the factors relevant to determining the existence of a violation, it was far from clear how the use of an exercise restriction as a means of punishing an inmate fits into the analysis. *Patterson* required a penological justification for "total or near-total" exercise deprivation; *Walker* deemed penological justification as one of the relevant factors in determining constitutionality. We conclude that, in light of the clearly established law in the Sixth Circuit, a reasonable prison official would not have known that it was unconstitutional to limit a prisoner's exercise to one hour per week, five days a week every thirty days as a means of punitive sanction.

In addition, *Spain* and *Davenport* fail to establish "clearly established law" in the Sixth Circuit. That is, the decisions did not "point unmistakably to the unconstitutionality of the conduct complained of" and were not "so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Black,* 4 F.3d at 445. *Spain* involved prisoners who had been isolated for more than *four years;* even if the conditions under which the *Spain* plaintiffs lived were similar to the conditions experienced by Rodgers here, the unconstitutionality of Rodgers's six and one-half month stay in detention is not clearly foreshadowed by the four-year deprivation in *Spain.* Also, the plaintiffs in *Spain* were *permanently* assigned to such conditions of confinement.

Likewise, *Davenport* failed to clearly foreshadow the illegality of the defendants' actions here. The Seventh Circuit in *Davenport* reviewed the minimum exercise time under a "clear error" standard because of the defendants' ill-advised concessions. The court's characterization of the district court's injunction as "not exceed[ing] the outer bounds of permissible interpretation of the Eighth Amendment" cannot be construed as "unmistakably" condemning the defendants' actions here as unconstitutional.

Finally, the Eighth Circuit's approval of exercise restrictions as a punitive sanction in *Leonard* suggests that the case law from other circuits did not clearly foreshadow that *Patterson* and *Walker* would be extended to strike down exercise restrictions where the offered penological justification is disciplinary sanction. *Leonard* also answers the plaintiff's assertion that the defendants must offer a penological justification specific to Rodgers; at least as of 1991, the unconstitutionality of using an exercise restriction as a punitive sanction for any prisoner's misconduct was not clearly established. Accordingly, we conclude that, in 1992, the "contours" of the right to exercise were not sufficiently clear that a reasonable prison official would understand that limiting Rodgers to one hour exercise per day, five days a week every thirty days, as a punitive sanction, violated the Eighth Amendment.

As to the factual dispute regarding whether Rodgers was even furnished the amount of exercise called for by the policy directives, we note that, for the most part, the defen-

dants complied with the directives' exercise regimen. As shown by the summary above, Rodgers received exercise at various times in September 1991, even before thirty days had elapsed. Then, from October 13–20, 1991, Rodgers received five exercise days out of seven. From November 19–26, 1991, Rodgers exercised six days out of eight. Again, from December 25, 1991, to January 1, 1992, Rodgers exercised six days out of eight. The only potential deficiency appeared during February 2–8, 1992. Rodgers was permitted to exercise at least four days out of seven; he perhaps was permitted to exercise on February 6, which has a blank entry. Also, between January 1, 1992 and February 2, 1992, thirty-one days elapsed; Rodgers should have been offered exercise on February 1. However, we conclude that a reasonable prison official still would not have known that the exercise offered in February 1992 violated the Eighth Amendment. Thus, the slight deficit in exercise is immaterial to the defendants' entitlement to qualified immunity.

Finally, we note that the defendants do not enjoy qualified immunity in their official capacities. Thus, although the plaintiff cannot recover money damages from the defendants in their individual capacities, his entitlement to injunctive relief remains unresolved.

## IV.

We **REVERSE** the district court and order summary judgment for the defendants on the basis of qualified immunity.