Beryl WILSON, Plaintiff,

v.

CITY OF KALAMAZOO, John Garwood and Jeff Vanderwiere, Defendants.

Michael A. Moran, Plaintiff,

v.

City of Kalamazoo, Tracy L. Seifferly and Frances Orfin, Defendants.

David L. Morris, Jr., Plaintiff,

v.

City of Kalamazoo, Jeffery L. Malcolm and Frances Orfin, Defendants.

Terrence L. Young, Plaintiff,

v.

City of Kalamazoo and David Boysen, Defendants.

David R. Liby, Plaintiff,

v.

City of Kalamazoo, Jeff Vanderwiere and Frances Orfin, Defendants.

Vincent E. Phillips, Plaintiff,

v.

City of Kalamazoo, Peter Hoyt and Kathy Mattmueller, Defendants.

Michael Hinton, Plaintiff,

v.

City of Kalamazoo, Scott Boling and Frances Orfin, Defendants.

Ricardo Montalvo, Plaintiff,

v.

City of Kalamazoo, Michael Kelley, Frances Orfin and Cory Ghiringhelli, Defendants.

Nos. 4:00–CV–12, 4:00–CV–43, 4:00–CV–46, 4:00–CV–47, 4:00–CV–60, 4:00–CV–66, 4:00–CV–70 and 4:00–CV–79.

United States District Court, W.D. Michigan, Southern Division.

Dec. 21, 2000.

Frederick Eagle Royce, III, Kalamazoo, MI, James R. Hyman, Jr., Kalamazoo, MI, for Plaintiff.

Richard A. Milligan, Kalamazoo City Attorney's Office, Kalamazoo, MI, for Defendant.

### OPINION OF THE COURT ON THE CITY'S MOTIONS FOR JUDGMENT ON THE PLEADINGS

McKEAGUE, District Judge.

In these eight actions, consolidated before the undersigned for limited pretrial purposes, plaintiffs allege that they were detained in the Kalamazoo City Jail without any clothing or covering at all for varying periods of time. Each of plaintiffs' complaints contains six counts, stating claims against the City of Kalamazoo and individual officers who participated in the complained of detention.[1] On November 20, 2000, all of plaintiffs' claims against the individual defendants were voluntarily dismissed. Now before the Court are the motions of defendant City of Kalamazoo for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The Court heard oral arguments on November 6, 2000, and has duly considered briefs submitted in support of and in opposition to defendant's

1. The Second Amended Complaint of plaintiff Beryl Wilson, in Counts I and VII, contains two unique claims, complaining of selective enforcement in violation of his equal protection and due process rights under the United States and Michigan Constitutions. At the hearing conducted on November 6, 2000, relating to the instant motions for judgment on the pleadings, counsel for plaintiff Wilson expressly assented to voluntary dismissal of the selective enforcement claims. Consequently, plaintiff Wilson's remaining six claims are essentially identical in nature to those of the other seven plaintiffs and his count II, III, IV, V, VI and VIII claims are, consistent with the numbering of counts in the other plaintiffs' complaints, referred to herein as counts I through VI, respectively.

motions. For the reasons that follow, the motions will be denied.

## I. FACT ALLEGATIONS

The relevant fact allegations may be summarized as follows. Each of these eight plaintiffs—Beryl Wilson, Michael A. Moran, David L. Morris, Jr., Terrence L. Young, David R. Liby, Vincent E. Phillips, Michael Hinton, and Ricardo Montalvo—was arrested by a Kalamazoo public safety officer within the last three years. Each plaintiff was booked into the Kalamazoo City Jail. During the intake procedure each plaintiff was asked whether he was suicidal and refused to answer. Because they refused to answer, plaintiffs were treated as posing a potential suicide risk, were ordered to strip, and were placed in a cell naked, without any clothing or covering whatsoever. They allege they were kept in their cells in this condition for varying periods of time, ranging from 6 hours and 17 minutes to 18 hours and 35 minutes. During the period of naked detention, each plaintiff alleges he was subject to monitoring by video camera. Five of the eight plaintiffs have specifically alleged they were seen by female officers while naked.

The City's position is that a new detainee's clothing was to be totally removed as a precautionary measure if he claimed to be suicidal or refused to answer whether he was suicidal. Upon removal of the detainee's clothing, he was to be issued a "suicide gown." In each of these eight cases, it appears no suicide gown was available.

## II. PLAINTIFFS' CLAIMS

Each of plaintiffs' complaints contains the same six claims, praying for relief exclusively in the form of monetary damages. Counts I and V contain claims exclusively against individual officers, which claims have been voluntarily dismissed. Count II contains a federal civil rights claim against the City of Kalamazoo under 42 U.S.C. § 1983. Each plaintiff alleges the City

violated his Fourth Amendment privacy rights and Fourteenth Amendment equal protection and substantive due process rights by detaining him in a naked condition. The City is said to be liable because the individual officers allegedly acted pursuant to official policy or practice. In count III, each plaintiff alleges the City is liable under § 1983 for the officers' wrongful conduct because the City failed to properly train them. Count IV is similar to count II, asserting the City is liable under § 1983 for the officers' conduct because their actions were taken pursuant to a "policy" of deliberate indifference to the civil rights of detainees. Count VI contains a claim for violation of Michigan's Constitution, asserting defendant City deprived each plaintiff of equal protection and substantive due process.

Plaintiffs have not pled facts specifically supporting their claims for denial of equal protection. At a hearing conducted on September 18, 2000, relating to the City's motions for judgment on the pleadings, attacking virtually identical claims in four related cases—*Johnson v. City of Kalamazoo*, No. 4:00–CV–44; *Mann v. City of Kalamazoo*, No. 4:00–CV–45; *Robinson v. City of Kalamazoo*, No. 4:00–CV–48; *Coleman v. City of Kalamazoo*, No. 4:00–CV–80—the Court confronted plaintiffs' counsel, James Hyman, who also represents all plaintiffs in these eight cases, with this pleading deficiency, which deficiency afflicts the instant complaints as well. Counsel conceded that the complaints were not well-drafted and made no objection to the Court's bench ruling dismissing all claims for denial of equal protection. The Court expressly provided that the dismissal was without prejudice to plaintiffs' right to amend their complaints upon proper motion. In the meantime, plaintiffs sought leave to amend, both in those four related cases and in these eight cases, but subsequently withdrew their motions. The motions for leave to amend in all 12 cases were therefore denied by orders dated November 8, 2000. The

Court construes this course of conduct, together with plaintiff Wilson's voluntary dismissal of his selective enforcement claims, and the parties' failure to even mention the equal protection claims in the present briefing, as reflective of plaintiffs' intent to abandon their equal protection claims under federal and state law. Accordingly, plaintiffs' equal protection claims will be dismissed.

## III. STANDARD OF REVIEW

The City's motions for judgment on the pleadings test the legal sufficiency of the pleadings. The Court must construe the complaints in the light most favorable to the plaintiffs, accept all fact allegations as true, and determine whether the plaintiffs undoubtedly can prove no set of facts in support of their claims that would entitle them to relief. *Mixon v. State of Ohio*, 193 F.3d 389, 400 (6th Cir.1999); *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). While the Court is required to accept all well-pled fact allegations as true, the Court need not accept proffered legal conclusions or unwarranted factual inferences as true. *Mixon*, 193 F.3d at 400; *Grindstaff*, 133 F.3d at 421.

## IV. § 1983 LIABILITY

In counts II, III and IV of their complaints, plaintiffs seek damages under 42 U.S.C. § 1983 for violation of their federally protected civil rights under color of state law. The City of Kalamazoo cannot be held liable under § 1983 for the actions of its employees pursuant to the doctrine of *respondeat superior*. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). To impose liability on the City, plaintiffs must show that a violation of their civil rights was caused by a municipal "policy" or "custom." *Id.* Further, as a threshold matter, plaintiffs must show that the actions allegedly taken pursuant to official policy or custom deprived them of some federally recognized civil right. *Baker v.*

*McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In moving for judgment on the pleadings, the City contends that even if plaintiffs were to prove all the facts alleged, they would not be entitled to any relief because naked detention for a brief period of time does not implicate any constitutional or otherwise federally recognized civil right.

### A. Fourth Amendment Privacy

Plaintiffs allege first that their naked detention violated their right of privacy under the Fourth Amendment. The applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a justifiable, reasonable, or legitimate expectation of privacy that has been invaded by government action. *Hudson v. Palmer*, 468 U.S. 517, 525, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In *Hudson*, the court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . . chief among which is internal security." *Id.* at 523–24, 104 S.Ct. 3194 (internal citation omitted). The court went on to hold "that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526, 104 S.Ct. 3194. Further, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28, 104 S.Ct. 3194.

*Hudson* thus upheld, against Fourth Amendment challenge, a policy permitting random cell searches. The court recognized the risk that "random" searches could be conducted out of malicious motive, strictly for the purpose of harassing inmates. The court expressly disavowed any intent to condone such abuse, but held that the appropriate remedy is found not

in the Fourth Amendment, but in the Eighth Amendment prohibition against cruel and unusual punishments, or in state tort law. *Id.* at 528–30, 104 S.Ct. 3194.

At least one court has construed *Hudson* as holding categorically that "the Fourth Amendment does not protect privacy interests within prisons." *Johnson v. Phelan,* 69 F.3d 144, 150 (7th Cir.1995). Yet, other courts, including the Sixth Circuit, have recognized that inmates retain limited rights to bodily privacy under the Fourth Amendment. *See Cornwell v. Dahlberg,* 963 F.2d 912, 916 (6th Cir.1992); *Moore v. Carwell,* 168 F.3d 234, 236–37 (5th Cir.1999); *Peckham v. Wisconsin Dept. of Corrections,* 141 F.3d 694, 697 (7th Cir.1998) (narrowing *Johnson v. Phelan*); *Swain v. Spinney,* 117 F.3d 1, 6–7 (1st Cir.1997); *Somers v. Thurman,* 109 F.3d 614, 618–19 (9th Cir.1997); *Fortner v. Thomas,* 983 F.2d 1024, 1030 (11th Cir. 1993); *Covino v. Patrissi,* 967 F.2d 73, 78 (2nd Cir.1992).

In *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), cited with approval in *Cornwell,* the Supreme Court employed a "reasonableness" standard in evaluating Fourth Amendment rights of a pretrial detainee, considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *If* a regulation or policy is deemed to impinge on Fourth Amendment rights, it will nonetheless be upheld as valid if it is reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Cornwell,* 963 F.2d at 916. This rational relationship test requires weighing several factors, such as: (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest asserted to justify it; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation.

*Id.* at 917.

Defendant City contends that each plaintiff's clothing was removed as a suicide prevention measure, in response to the plaintiff's refusal to answer the intake question as to whether he was suicidal. Its response was appropriate, the City contends, because otherwise, its "deliberate indifference" to a detainee's psychological needs that might result in suicidal tendencies could be actionable as a denial of due process. *See Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994). Yet, even apart from the reasonableness of this justification, the City argues that plaintiffs have failed to state a valid claim because the nature of the intrusion upon their privacy interests was so minor as to not rise to the level of a Fourth Amendment violation.

First, the City notes the relatively short duration of each plaintiff's naked confinement; the shortest period being 6 hours and 17 minutes, and the longest being 18 hours and 35 minutes. Second, the City contends that although five of the plaintiffs allege they were seen by female officers while naked, none has alleged he was subject to close or continuous observation by females. These circumstances, the City contends, distinguish plaintiffs' claims from those which have been found to implicate cognizable Fourth Amendment privacy interests.

In *Cornwell v. Dahlberg,* 963 F.2d at 916, the Sixth Circuit recognized the facial validity of a Fourth Amendment invasion of privacy claim where male prisoners were allegedly strip searched outside in the prison yard in the presence of other inmates and female officers. In *Kent v. Johnson,* 821 F.2d 1220 (6th Cir.1987), the court held that a Fourth Amendment challenge to a prison policy requiring male

prisoners to expose their naked bodies to regular and continuous surveillance by female officers was facially valid. Similarly, other courts that have recognized prisoners' bodily privacy interests have done so in the context of relatively serious intrusions, comparable to those presented in *Cornwell* and *Kent. See Moore,* 168 F.3d at 236 (cross-gender strip searches); *Peckham,* 141 F.3d at 697 (strip searches); *Swain,* 117 F.3d at 6–7 (strip search and body cavity search); *Somers,* 109 F.3d at 618–22 (cross-gender body cavity searches and cross-gender surveillance of prisoners while naked); *Fortner,* 983 F.2d at 1028–30 (cross-gender surveillance of prisoners while naked); *Covino,* 967 F.2d at 77–80 (body cavity searches).

The instant alleged facts do not involve an invasion of privacy as serious as those at issue in the above cases. The duration of each plaintiff's naked confinement was relatively short and each plaintiff's exposure to viewing by others, and particularly by members of the opposite sex, appears to have been limited. Nonetheless, applying the *Bell v. Wolfish* reasonableness standard, the Court finds that the City's alleged practice of removing *all* of a new detainee's clothing does impinge on his Fourth Amendment privacy rights.

For present purposes, the Court accepts the facial legitimacy of the City's justification for the practice. Given plaintiffs' refusal to cooperate fully, a fact essentially admitted by each plaintiff in his complaint, the removal of clothing during an initial period of observation presumably afforded detention officers fair opportunity to ascertain that plaintiffs were not suicidal before allowing them to have articles of clothing which otherwise might have posed some risk of self-inflicted harm. The Court also accepts, for present purposes, the City's explanation that "suicide gowns" normally issued to inmates suspected of being suicidal were not issued to plaintiffs simply because they were not available. What has not been adequately justified, however, is the practice of removing even a detainee's underclothing.

This is particularly troubling in view of the Court's familiarity with the facts alleged in four related cases involving Kalamazoo City Jail detainees, referred to at page 858, *supra,* of which the Court may take judicial notice. The facts alleged in those four complaints are identical to the instant cases in all material respects, except that those four plaintiffs were allowed to keep their underclothing. That is, despite their having refused to answer the suicide question, they were, in the absence of suicide gowns, permitted to keep their underwear and t-shirts. They were permitted this accommodation, allowing them to maintain some minimal level of bodily privacy and modesty, without, apparently, creating an undue or unmanageable risk of suicide.

In a ruling issued on December 11, 2000, this Court held that those four plaintiffs failed to state valid claims for violation of their rights to privacy and due process and awarded the City judgment as a matter of law. The instant claims are different. The alleged intrusion upon plaintiffs' privacy interests is clearly more serious, as plaintiffs were denied any and all means of shielding their private body parts from viewing by others, at least by video surveillance, for at least six, and as many as 18, hours. Yet, the City's justification for this greater intrusion is no different than its justification for its removal only of the plaintiffs' outer clothing in the four related cases. Thus, comparison of the pleadings in these two sets of cases demonstrates that, in the language of *Turner v. Safley,* the City had at least one readily apparent, and available, alternative means of minimizing the risk of suicide and securing inmate safety that would have also, at least minimally, observed plaintiffs' interests in bodily privacy and modesty. Why this alternative accommodation was not afforded to the instant plaintiffs is not explained in the present record.

In the wake of *Hudson v. Palmer*, the contours of prisoners' minimal privacy rights are still being defined by the courts. However, at this early stage in this litigation, the Court remains unpersuaded that society is not, as a matter of law, prepared to recognize as legitimate an inmate's subjective expectation that he may not be stripped of all clothing and covering, even for a short period of time, simply because he refuses to answer a question as to whether he is suicidal.

Thus, viewing the complaints in the light most favorable to the plaintiffs, the Court cannot hold that they cannot prove any set of facts consistent with their pleadings that would entitle them to relief. It follows that the defendant City's motions for judgment on the pleadings, insofar as they challenge plaintiffs' Fourth Amendment claims, must be denied.

## B. Fourteenth Amendment Due Process

▮▮▮ Plaintiffs also allege that their naked confinement constituted a denial of due process. Indeed, pretrial detainees, who have not been convicted of any crime, retain at least those constitutional rights enjoyed by convicted prisoners. *Bell*, 441 U.S. at 545, 99 S.Ct. 1861. Thus, although pretrial detainees are not technically within the protection of the Eighth Amendment prohibition against cruel and unusual punishment, they receive analogous protection under the Due Process Clause of the Fourteenth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833, 849–50, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *Horn*, 22 F.3d at 660.

▮▮▮ The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain." *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Talley–Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir.1999). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Conditions of confinement are "sufficiently serious" to make out an Eighth Amendment violation only if they result in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834, 114 S.Ct. 1970; *Talley–Bey*, 168 F.3d at 886; *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir.1995). This is the "objective component" of an Eighth Amendment conditions of confinement claim. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Rodgers*, 43 F.3d at 1086. If the objective component is satisfied, plaintiffs must also meet a second requirement, the "subjective component." That is, plaintiffs must show that defendant acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298, 111 S.Ct. 2321. In the conditions of confinement context, the sufficiently culpable state of mind is defined as "one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970.

The City argues that even though plaintiffs' short-term naked detention may have been uncomfortable, they have not alleged a sufficiently serious deprivation of "life's necessities" to satisfy the objective component of a due process claim.

In *Kent v. Johnson*, the Sixth Circuit observed in 1987 that no federal court had yet held that subjecting male prisoners, while naked in the shower, to surveillance by female officers constituted an Eighth Amendment violation. 821 F.2d at 1227. Nonetheless, the *Kent* court vacated the dismissal of such a claim where the plaintiff alleged "that female prison guards [had] allowed themselves unrestricted views of his naked body in the shower, at close range and for extended periods of time, to retaliate against, punish and harass him for asserting his right to privacy." *Id.* at 1227–28. In other words, the Sixth Circuit recognized that cross-gender surveillance of naked prisoners could conceivably, under some circumstances, satisfy the objective component of a conditions of confinement claim. The court distinguished the alleged facts before it from

"occasional and almost inadvertent sightings" by female guards, which would not be actionable. *Id.* at 1228.

Since *Kent,* the "possibility" that cross-gender surveillance of naked prisoners could rise to the level of an Eighth Amendment violation has not received much development in the case law. In fact, in *Somers v. Thurman,* 109 F.3d at 622, allegations that female officers conducted visual body cavity searches of male prisoners and watched male prisoners while showering naked were held by the Ninth Circuit to be insufficient to satisfy the objective component of an Eighth Amendment claim. However, in another Ninth Circuit ruling, heavily relied on by plaintiffs, the court described as "blatantly unconstitutional," a policy or custom of "stripping persons who have committed minor traffic infractions, throwing them naked into a 'rubber room' and holding them there for ten hours or more for failing to sign a traffic ticket or asserting their legal right to be brought before a magistrate." *Henry v. County of Shasta,* 132 F.3d 512, 520 (9th Cir.1997). The *Henry* court failed to identify the nature of the constitutional violation, but presumably found Shasta County officials' alleged treatment of Henry violative of his due process rights as a pretrial detainee. Under any construction, it is clear that Henry's having been stripped naked without even colorable justification and left in this condition for 10 hours was deemed a blatant abuse of power.

Plaintiffs also cite *Rushing v. Wayne County,* 436 Mich. 247, 250, 462 N.W.2d 23 (1990), where a female pretrial detainee was, as a suicide prevention measure, kept in a "semi-naked state [underpants only] for four days and exposed to repeated [unnecessary] observation by members of the opposite sex during her detention." The Michigan Supreme Court vacated the trial court's order granting the defendants a directed verdict. The *Rushing* court concluded the plaintiff had established a colorable claim for invasion of privacy or

deprivation of liberty without due process insofar as she was forced to expose private body parts to unnecessary viewing by males, including officers, a janitor (on repeated occasions) and a group of 10 or 12 students. *Id.* at 263–65, 462 N.W.2d 23.

The *Rushing* facts may be more egregious, in terms of exposure and duration, than the instant facts. Yet, in *Rushing, Henry, Kent,* and other conditions of confinement cases, a common thread is discernible. Although the Constitution does not mandate comfortable jails and prisons, it is clear that where inhumane conditions persist or suffering is inflicted, not as a function of the normal incidents of prison life, but unnecessarily and without at least colorable justification, constitutional safeguards may come into play.

Here, as in *Kent,* plaintiffs' allegations only arguably make out a denial of the "minimal civilized measure of life's necessities." Yet, it is the apparent lack of colorable justification for the removal of *all* of plaintiffs' clothing that makes the City's challenged practice suspect. Consistent with this Court's December 11, 2000 ruling in the above-mentioned related cases, the Court concludes that it would not have been violative of due process to detain plaintiffs clad only in their underwear, as a suicide prevention measure, for short periods of time. However, to strip plaintiffs naked and provide them with no means of covering their bodies, forcing them to expose private body parts to viewing by female officers and to video surveillance for several hours, where the City's legitimate interest in suicide prevention could ostensibly have been just as well served by less degrading and humiliating means, *see supra,* pp. 861–62, is a practice which, on its face, is actionable as an unnecessary and unwarranted infliction of suffering.

It is conceivable that plaintiffs could prove facts consistent with their pleadings that would entitle them to relief. Accordingly, the City's motions for judgment on the pleadings, insofar as they challenge

plaintiffs' Fourteenth Amendment due process claims, will also be denied.

## V. DUE PROCESS UNDER MICHIGAN CONSTITUTION

■ In count VI of their complaints, plaintiffs allege the City is liable for violating their due process rights under the Michigan Constitution. The due process protections afforded by the Michigan Constitution are co-extensive with those afforded under the United States Constitution. *American States Ins. Co. v. State, Department of Treasury,* 220 Mich.App. 586, 589 n. 1, 560 N.W.2d 644 (1996). Accordingly, the analysis contained in part IV above applies with equal force to plaintiffs' count VI claims.

## VI. CONCLUSION

For all the foregoing reasons, the motions of defendant City of Kalamazoo for judgment on the pleadings on plaintiffs' remaining claims, for violation of their rights to privacy and due process under the United States and Michigan Constitutions, will be denied.

To the extent plaintiffs' complaints may be construed as stating claims for violation of their rights to equal protection under the United States and Michigan Constitutions, such claims will be dismissed.

An order consistent with this Opinion shall issue forthwith.